# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

DAVID STEBBINS,

      Plaintiff,

v.                                                                              CIVIL ACTION NO. 2:24-cv-140

JOSHUA MOON and
LOLCOW LLC,

      Defendants.

### PROPOSED FINDINGS & RECOMMENDATION

This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  (ECF No. 4).  Before the Court is the *Application to Proceed in District Court Without Prepaying Fees or Costs* filed by Plaintiff David Stebbins ("Plaintiff" or "Mr. Stebbins"), who is proceeding pro se in this civil action. (ECF No. 1). Therein, Plaintiff seeks leave to proceed *in forma pauperis* ("IFP"). *See id.* For the reasons explained more fully herein, it is respectfully **RECOMMENDED** that the Court deny Plaintiff's *Application*, and dismiss his case without prejudice unless he pays the $405.00 filing fee within thirty days of an order accepting this recommendation.

## I.    BACKGROUND

Plaintiff, proceeding pro se, filed his *Complaint* and *Application to Proceed in District Court Without Prepaying Fees or Costs* in this civil action on March 21, 2024.

Plaintiff alleges in his Complaint that he is "a YouTuber and a Twitch streamer who goes by the alias 'Acerthorn.'" (ECF No. 2 at 1 ¶ 1). Plaintiff's "job," according to the Complaint, "is to create videos and upload them to YouTube." *Id.* at 3 ¶ 14. Plaintiff asserts that he is "a member of the YouTube Partner Program, which means that, whenever advertisements play on [his] videos, [he is] eligible to receive a portion of that revenue" as determined by a complex algorithm employed by YouTube. *Id.*

Plaintiff alleges that "[i]n February of 2023, [he] contracted with a composer in Argentina . . . to compose ten original songs for [Plaintiff's YouTube] channel." *Id.* at 4 ¶ 18. Plaintiff alleges that "[t]he composer signed a contract selling the copyrights to me," and Plaintiff then paid $85 "for the cost of registering the copyright for these songs[.]" (ECF No. 2 at 17 ¶ 94; 18 ¶ 101). Plaintiff asserts that "[t]hese were works for hire, which means that I own 100% of the copyright to these songs." *Id.* at 5 ¶ 22. Plaintiff includes these songs, in various combinations, "to be used as background music" in all of the YouTube videos he uploads—"meaning anyone who copies any portions of [Plaintiff's] videos will, almost invariably, be copying portions of these songs as well[.]" *Id.* ¶¶ 22-25.

The Complaint alleges six counts of copyright infringement against the Defendants, Joshua Moon and Lolcow LLC. *See id.* According to Plaintiff, Defendant Joshua Moon is "the owner and operator of the business entity Lolcow LLC, a business which itself owns and operates the website of Kiwi Farms." (ECF No. 2 at 1 ¶ 2).

Plaintiff alleges in the Complaint that he posted a video to his YouTube channel on March 12, 2024, titled "Kiwi Farms Goes to the Supreme Court; It Will Most Likely Fail, and Here's Why." *Id.* at 5 ¶ 26. Therein, Plaintiff expressed his opinion regarding a legal action in which Defendant Moon was a party. *Id.* at 6 ¶ 27. Plaintiff asserts that "[t]hroughout the video, [he] used six of [his] ten copyrighted songs as background

music." *Id.* ¶ 28. Plaintiff alleges that subsequently "on March 12, 2024, some Kiwi Farms user by the alias 'Bruno Powroznik' (or 'Bruno' for short) posted the entirety of [Plaintiff's] video about Kiwi Farms going to the Supreme Court." *Id.* at 8 ¶ 38. According to Plaintiff, Bruno's "primary purpose of reposting [Plaintiff's] video on Kiwi Farms was to enable the Kiwi Farms users to see [Plaintiff's] video without giving [Plaintiff] any algorithmic support[.]" *Id.* ¶ 39. Because the video posted by the user, Bruno, on the Kiwi Farms website "repost[ed] [Plaintiff's] video in its entirety"—in which the six copyrighted songs are featured—Plaintiff asserts that Bruno "necessarily infringe[d] on *six* different copyrights, aka $4,500 - $900,000 statutory damages worth of copyright infringements." *Id.* ¶ 29.

Plaintiff alleges that the following day on March 13, 2024, Plaintiff "sent a DMCA Takedown Notice"[1] to Kiwi Farms pursuant to instructions found on the website. *Id.* ¶ 41. While the Complaint is unclear, it appears that the video was then taken down from the Kiwi Farms website. However, Plaintiff alleges that, several hours later, "co-Defendant Joshua Moon (posting under his username 'Null') made a post" on the Kiwi Farms website in the same "thread" as Bruno's original subject post, stating the following:

> @Bruno Powroznik Acerthorne is DMCA'ing your archive. To be safe, you have to split it up into chapters and add commentary to justify each segment being uploaded by fair use. Add some sort of criticism or commentary.

*Id.* ¶ 42. Plaintiff alleges that, later the same day, "Bruno—acting pursuant to Moon's express invitation . . . reposted my video, only this time, he provided some nominal additional commentary." *Id.* at 9 ¶ 45. According to Plaintiff, Bruno's "new post . . . still

---

[1] The undersigned takes judicial notice that the Complaint is referring to the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.*, which "governs the means by which copyright holders can notify online service providers that their sites are hosting or providing access to allegedly infringing material." *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 432 (S.D.N.Y. 2021).

copied literally 100% of [Plaintiff's] original video" and while Bruno "may have *added* a few moments of original content . . . he *subtracted* nothing." *Id.* ¶ 46. Plaintiff asserts that there are "at least four segments in this reposting where well over a minute of [Plaintiff's] original video was played without interruption before [Bruno] finally [inserted] . . . any original commentary, and [there are] over a dozen segments where more than half a minute of [Plaintiff's] original video was similarly played without interruption." *Id.* ¶ 47. Plaintiff alleges that he issued another DMCA Takedown Notice to Kiwi Farms on the afternoon of March 13, 2024, but that Kiwi Farms ultimately "refused to take down the second infringing post," appearing to rely upon the "free use" defense to copyright infringement. *See id.* at 9 ¶ 49—10 ¶ 51. Plaintiff's Complaint concedes that "none of this matters as long as the second video qualifies as fair use[,]" however, Plaintiff further states in his Complaint that "fair use requires a lot more than just providing a few moments of token criticism and calling it a day." *Id.* at 11 ¶ 61.

Based upon these allegations, Plaintiff seeks a declaratory judgment finding that "(a) the copyright to six of [Plaintiff's] copyrighted songs were unlawfully infringed upon on the Kiwi Farms website on March 13, 2024; (b) Defendants Joshua Moon and Lolcow LLC are vicariously liable for the infringement[.]" *Id.* at 17-18 ¶ 98. Further, Plaintiff seeks, *inter alia*, $900,000 in statutory damages, "amount[ing] to $150,000 for each of the six copyrighted songs which were infringed upon." *Id.* at 18 ¶ 100.

Plaintiff characterizes the Kiwi Farms website and its users as "trolls," and he claims that "[t]he entire [Kiwi Farms] website is dedicated almost exclusively to harassing, dox[]ing, and cyberstalking . . . people for its users' demented amusement." *Id.* at 1 ¶ 6; 16 ¶ 90. According to Plaintiff, the users of the Kiwi Farms website "call their victims 'lolcows' because their pain can be milked for laughs," and the stated purpose of

4

this "group," according to Plaintiff, is "[g]ossip and exploitation of mentally handicapped for amusement purposes." *Id.* at 2 ¶ 6. Plaintiff takes issue with the alleged insults against him made by Defendant Moon and the user identified as "Bruno" during the course of these events, including Bruno's alleged criticism "that [Plaintiff's] voice is annoying[.]" (ECF No. 2 at 16 ¶ 89). Plaintiff specifically alleges in his Complaint that, after sending his "DMCA Takedown Notice" to Kiwi Farms on March 13, 2024, the user "Null" who Plaintiff identifies as Defendant Moon:

> made a post calling me 'a fat smug condescending prick and he uses the court system to harass people into submission. He seems like a really sad, vacuous old man rotting in his decrepit apartment.'

*Id.* at 8-9 ¶ 44. Notably, among the monetary and injunctive relief he seeks, Plaintiff also asks "that the Defendant be enjoined to . . . permanently terminate Bruno Powroznik's account with Kiwi Farms . . . and to prevent Bruno from rejoining the site after being banned[.]" (ECF No. 2 at 18 ¶ 102).

In his IFP application, Plaintiff alleges that his sole sources of income include social security benefits in the amount of $943 per month, as well as self-employment income in the average amount of $47.65 per month. (*See* ECF No. 1). Plaintiff further asserts that he has $223 in cash, and "no noteworthy assets." *Id.* Finally, Plaintiff asserts that he has monthly fixed expenses of $495 per month, and that he has debt in the amount of $40,000. *See id.*

On March 27, 2024, counsel for the Defendants Joshua Moon and Lolcow LLC (together, "Defendants") entered an appearance and filed a *Motion for Screening of In Forma Pauperis Complaint and for Leave to Supplement the Record.* (ECF Nos. 5; 6). Therein, Defendants requested "that this Court screen the Complaint . . . pursuant to 28 U.S.C. § 1915(e), and to grant leave for the Defendants to supplement the record for

purposes of such screening, prior to the issuance of any summons and before responsive pleadings become due in the ordinary course." (ECF No. 5 at 1). In support of their motion, Defendants cited Plaintiff's extensive litigation history—including extensive litigation in other federal district courts—and relied upon certain representations and findings therein to question the veracity of Mr. Stebbins's representations regarding his indigent financial status. *See id.* The undersigned denied Defendants' motions in light of the inflammatory language employed in the parties' briefings, finding that Plaintiff's prior conduct was not necessarily relevant to the instant proceedings and under the circumstances "would only serve to multiply and delay proceedings, draw this matter off course, and tax the Court's limited resources." (ECF No. 12 at 4-5).

Since the undersigned's April 15, 2024 *Order* denying Defendants' requests, however, Plaintiff's conduct in prior litigation has become directly pertinent to this matter, as Plaintiff has continued in an ongoing and well-documented pattern of abusive litigation misconduct in the federal district courts.

### A.    Plaintiff's Litigation History

According to a PACER search, it appears that, in the federal district courts alone, Plaintiff has initiated approximately *fifty* civil actions since 2010, across more than twelve different district courts:

1. *Stebbins v. Mid States Promotions*, 3:10-cv-3041 (W.D. Ark. May 10, 2010);
2. *Stebbins v. Univ. of Ark.*, 5:10-cv-5125 (W.D. Ark. July 12, 2010);
3. *Stebbins v. Richardson*, 6:10-cv-3305 (W.D. Mo. Aug. 2, 2010);
4. *Stebbins v. Full Sail Univ.*, 3:10-cv-03072 (W.D. Ark. Aug. 4, 2010);
5. *Stebbins v. Full Sail Univ.*, 6:10-cv-1165 (M.D. Fla. Aug. 5, 2010);
6. *Stebbins v. Wal-Mart Stores, Inc.*, 3:10-cv-3123 (W.D. Ark. Dec. 17, 2010);
7. *Stebbins v. NET-ARB, Inc.*, 3:11-cv-3025 (W.D. Ark. Mar. 29, 2011);
8. *Stebbins v. Harp & Assocs.*, 3:11-cv-3029 (W.D. Ark. Apr. 5, 2011);
9. *Stebbins v. Kirkpatrick*, 3:11-cv-3042 (W.D. Ark. June 16, 2011);
10. *Stebbins v. Legal Aid of Arkansas*, 3:11-cv-3057 (W.D. Ark. July 20, 2011);

11. *Stebbins v. Hannah*, 3:11-cv-3058 (W.D. Ark. July 21, 2011);

12. *Stebbins v. Google, Inc.*, 5:11-cv-3876 (N.D. Cal. Aug. 8, 2011);

13. *Stebbins v. Microsoft Inc.*, 2:11-cv-1362 (W.D. Wash. Aug. 15, 2011);

14. *Stebbins v. Texas*, 3:11-cv-2227 (N.D. Tex. Aug. 29, 2011);

15. *Stebbins v. Harp & Assocs.*, 3:11-cv-3078 (W.D. Ark. Sept. 9, 2011);

16. *Stebbins v. Boone Cty., Ark.*, 3:12-cv-3022 (W.D. Ark. Feb. 17, 2012);

17. *Stebbins v. Soc. Sec. Admin. Comm'r*, 3:12-cv-3032 (W.D. Ark. Mar. 8, 2012);

18. *Stebbins v. Marczuk*, 3:12-cv-3039 (W.D. Ark. Mar. 19, 2012);

19. *Stebbins v. United States*, 1:12-cv-289 (Fed. Cl. May 4, 2012);

20. *Stebbins v. United States*, 1:12-cv-296 (Fed. Cl. May 7, 2012);

21. *Stebbins v. Bradford*, 3:12-cv-3131 (W.D. Ark. Oct. 4, 2012);

22. *Stebbins v. Stebbins*, 3:12-cv-3130 (W.D. Ark. Oct. 4, 2012);

23. *Stebbins v. Steen*, 4:12-cv-704 (E.D. Ark. Nov. 8, 2012);

24. *Stebbins v. United States*, 1:12-cv-296 (D. D.C. Dec. 18, 2012);

25. *Stebbins v. Watkins*, 3:13-cv-3068 (W.D. Ark. July 2, 2013);

26. *Stebbins v. Arkansas*, 4:14-cv-227 (E.D. Ark. Apr. 14, 2014);

27. *Stebbins v. Keahea*, 1:14-cv-900 (D. D.C. May 28, 2014);

28. *Stebbins v. EduCap, Inc.*, 1:14-cv-961 (E.D. Va. July 28, 2014);

29. *Stebbins v. United States*, 1:14-cv-1267 (E.D. Va. Sept. 25, 2014);

30. *Stebbins v. Gay*, 4:15-cv-332 (E.D. Ark. June 5, 2015);

31. *Stebbins v. Hannah*, 4:15-cv-436 (E.D. Ark. July 15, 2015);

32. *Stebbins v. Hixson*, 4:17-cv-711 (E.D. Ark. Oct. 31, 2017);

33. *Stebbins v. Arkansas*, 4:16-cv-454 (E.D. Ark. July 27, 2016);

34. *Stebbins v. Arkansas*, 4:16-cv-638 (E.D. Ark. Sept. 2, 2016);

35. *Stebbins v. Arkansas*, 4:16-cv-878 (E.D. Ark. Dec. 2, 2016);

36. *Stebbins v. Arkansas*, 3:17-cv-3016 (W.D. Ark. Feb. 27, 2017);

37. *Stebbins v. Arkansas*, 3:17-cv-3092 (W.D. Ark. Oct. 13, 2017);

38. *Stebbins v. Hixson*, 3:18-cv-3040 (W.D. Ark. Apr. 2, 2018);

39. *Stebbins v. Polano*, 4:21-cv-4184 (N.D. Cal. June 2, 2021);

40. *Stebbins v. Alphabet Inc.*, 4:22-cv-546 (N.D. Cal. Jan. 27, 2022);

41. *Stebbins v. CMDR Imperial Salt*, 3:22-cv-4082 (N.D. Cal. July 11, 2022);

42. *Stebbins v. Google, Inc.*, 3:23-cv-322 (N.D. Cal. Jan. 20, 2023);

43. *Stebbins v. Doe*, 3:23-cv-321 (N.D. Cal. Jan. 20, 2023);

44. *Stebbins v. Baz*, 3:24-cv-398 (N.D. Cal. Jan. 10, 2024);

45. *Stebbins v. Moon*, 2:24-cv-140 (S.D. W. Va. Mar. 21, 2024);

46. *Stebbins v. Doe*, 3:24-cv-3727 (N.D. Cal. June 21, 2024);

47. *Stebbins v. Doe*, 4:24-mc-80179 (N.D. Cal. June 21, 2024);

48. *Stebbins v. CMDR Imperial Salt*, 8:24-cv-1486 (C.D. Cal. July 5, 2024);

49. *Stebbins v. Doe*, 1:24-cv-1173 (D. Del. Oct. 21, 2024);

50. *Stebbins v. Rumble Inc.*, 1:24-cv-1174 (D. Del. Oct. 21, 2024);

Importantly, despite this prolific number of filings, Mr. Stebbins has a self-described "abysmal win-loss record," and in fact "ha[s] never won a case." Mtn. to Appoint Counsel, *Stebbins v. Rumble, Inc.*, No. 1:24-cv-1174-MN (Dist. Del. Jan. 3, 2025), ECF No. 10 at 2, 5. While Mr. Stebbins's litigation history is far too extensive to cover for purposes of this civil action, the undersigned has summarized a few of the relevant portions, *infra*, in four of these jurisdictions—the Eastern District of Arkansas; the Western District of Arkansas; the Northern District of California; and the Western District of Washington.

### i.    U.S. District Court – Western District of Arkansas

Plaintiff has filed at least twenty-one civil actions in the U.S. District Court for the Western District of Arkansas, in which he sought to proceed IFP, the most relevant of which is *Stebbins v. Stebbins*, 3:12-cv-03130 (W.D. Ark.), in which Mr. Stebbins filed a pro-se action for identity theft, alleging that defendants, his parents, improperly listed him as a dependent on their tax returns. After reviewing Plaintiff's IFP application, the federal magistrate judge recommended that Mr. Stebbins's motion to proceed *in forma pauperis* ("IFP") be denied, and that the Clerk be directed not to accept future filings from Mr. Stebbins unless he pays the filing fee. The magistrate judge explained that, over an approximately two-year time period, "Plaintiff has filed sixteen cases and asked to proceed IFP in each case . . . . Based on the sheer number of Plaintiff's filed cases and the clear policy of the Supreme Court to discourage such 'abusive' voluminous filing, the undersigned concludes that Plaintiff's request to proceed IFP should be denied." *Stebbins v. Stebbins*, 3:12-cv-03130 (W.D. Ark. Feb. 6, 2013), ECF No. 7 at 3.

Adopting the magistrate judge's recommendation, presiding U.S. District Judge P.K. Holmes, III, rejected Mr. Stebbins's objection that the magistrate judge erred in only

considering Mr. Stebbins's litigation history in recommending that Mr. Stebbins be denied *in forma pauperis* status. *See Stebbins v. Stebbins*, 3:12-cv-03130 (W.D. Ark. July 3, 2013), ECF No. 10 at 1. Judge Holmes explained that, while Mr. Stebbins "undoubtedly has a right of access to the courts," this right of access, "especially a right of free access, cannot be unlimited in the face of abuse." *Id.* Ultimately, Judge Holmes found that "Mr. Stebbins's history of unsubstantial and vexatious litigation is an abuse of the permission granted to him to proceed as a pauper in good faith under 28 U.S.C. § 1915(d)." *Id.* at 3 (quoting *Maxberry v. Sec. & Exchange Comm'n.*, 879 F.2d 222, 224 (6th Cir. 1989)). Additionally, Judge Holmes specifically advised Mr. Stebbins "not to yell at court staff or use abusive language in any written or oral communication with the Court or fellow litigants." *Id.* at 6-7. Judge Holmes further stated as follows:

> Mr. Stebbins will be expected to behave with the decorum expected of all litigants who appear before, or file pleadings with, this Court. Failure to behave in a proper manner may result in sanctions being imposed on Mr. Stebbins or further restrictions or conditions placed on his ability to make filings or informal communications with the Court.

*Id.* at 7. Finally, Judge Holmes wrote that he considered a motion to disqualify the magistrate judge filed by Mr. Stebbins, and found that the motion should be denied. *Id.* Judge Holmes rejected Mr. Stebbins's argument that the magistrate judge "has demonstrated an animus against him" and explained that, simply put, "[t]he fact that Mr. Stebbins disagrees with or does not like [the magistrate judge's] recommendations, or this Court's findings, does not create grounds for disqualification." *Id.*

Plaintiff appealed Judge Holmes's decision to the U.S. Court of Appeals for the Eighth Circuit. *See Stebbins v. Stebbins*, 14-1845 (8th Cir. Sept. 26, 2014) (per curiam). The Eighth Circuit affirmed the district court's decision, noting in particular Mr. Stebbins's history of litigation in the U.S. District Court for the Western District of

Arkansas. *See id.* The Eighth Circuit explained that, "[i]n dismissing Stebbins's complaint, the district court concluded that Stebbins had a history of frivolous litigation and had abused the privilege of proceeding in forma pauperis; the court thus imposed restrictions on Stebbins's future filings." *Id.* " Specifically, the court limited the number of cases that Stebbins could file in the Western District of Arkansas to no more than one case every three months, and only upon payment of a $50 bond, refunded if the complaint was adjudged not frivolous." *Id.* The Eighth Circuit concluded that the district court properly dismissed Plaintiff's complaint for failure to state a claim—and that the court did not abuse its discretion in imposing the filing restrictions—because, *inter alia*, it was "undisputed that Stebbins has proceeded in forma pauperis on at least sixteen complaints that proved meritless, and has filed numerous frivolous motions[.]" *Id.*

## ii.    U.S. District Court – Eastern District of Arkansas

Plaintiff filed approximately eight civil actions in the U.S. District Court for the Eastern District of Arkansas between 2012 and 2017. Notably, Plaintiff brought suit against Him Hannah, the then-Chief Justice of the Arkansas Supreme Court, as well as against Donna Gay, a court employee, in *Stebbins v. Gay*, 4:15-cv-332 (E.D. Ark. June 5, 2015), ECF No. 2. In his Complaint, Plaintiff asserted a claim pursuant to 42 U.S.C. § 1983, arising from his filing of a civil action in Arkansas state court, following which the presiding state-court judge recused himself. *See id.* Plaintiff alleged that, ultimately, after waiting for "a whopping 108 days," no new judge was appointed. *Id.* at 3. Plaintiff alleges that he "had enough" and "called the Arkansas Administrative Office of the Courts and asked what was taking so long," until he was directed to Defendant Gay. *Id.* According to the Complaint, Ms. Gay "offered no excuses, no explanation as to why it was taking nearly four whole months to find a new judge[.]" *Id.* at 4. In response, "Plaintiff subsequently

advised her that, as an *administrative* officer (and not a judicial one), she is not entitled to absolute immunity from suit; thus, if she does not do her job, consequences can and will attach." *Id.* Plaintiff alleged that, once a judge was appointed to the case, the judge acted in a biased manner, "clearly out of animosity towards Plaintiff[.]" *Id.* at 4-5. Plaintiff further alleges in the Complaint that subsequently "[o]n May 26, 2015, Plaintiff called Donna Gay again (this time, recording the phone call) in an attempt to check up on [his request for a] special judge assignment." *Id.* at 10. According to the Complaint, Ms. Gay "hung up on Plaintiff, and did not allow Plaintiff to ask any follow-up questions." *Id.* at 11. In response, "Plaintiff proceeded to get to work, typing this complaint." *Id.* Plaintiff asserted that the actions of the defendants, Hannah and Gay, deprived him of his right to an impartial judiciary. *See id.* at 17. Plaintiff sought relief in the form of, *inter alia*, "$12,000,000 to make him whole, and $24,000,000 in punitive damages to send a message to future government agents who may have a mind to do, or not do anything— no matter what that 'anything' is—that has the natural consequence of 'loss of constitutional rights.' " *Id.* at 26.

Presiding U.S. District Judge Brian S. Miller dismissed the complaint with prejudice in a one-page order, finding that negligence cannot form the basis of a § 1983 claim. *See Stebbins v. Gay*, 4:15-cv-332 (E.D. Ark. June 22, 2015). *See also Stebbins v. Arkansas*, 4:14-cv-227 (E.D. Ark. Mar. 31, 2015) ("*Arkansas I*") (dismissing Plaintiff's claims against the State of Arkansas and various state officials for alleged violations of the Americans with Disabilities Act and the Rehabilitation Act of 1973 for failure to state a claim); *Stebbins v. Steen*, 4:12-cv-704 (E.D. Ark. Aug. 20, 2013) (dismissing Plaintiff's claims as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)).

### iii.    U.S. District Court – Northern District of California

In a copyright-infringement case Plaintiff brought against Google LLC in the U.S. District Court for the Northern District of California, the presiding district judge in that matter, the Hon. Trina L. Thompson, granted Google LLC's motion to dismiss and to declare Plaintiff a vexatious litigant. *Stebbins v. Google LLC*, No. 3:23-cv-322 (N.D. Cal. Aug. 31, 2023), ECF No. 71. Discussing Plaintiff's litigation history in part, Judge Thompson explained that in "another case in which Plaintiff [wa]s involved" in the U.S. District Court for the Northern District of California, "the court there noted . . . [that it] does not endorse Plaintiff's efforts to manipulate the litigation process and his blatant gamesmanship." *Id.* at 4 (quoting *Stebbins v. Polano*, 21-cv-04184 (N.D. Cal. Apr. 12, 2022), ECF No. 134 at 1. Judge Thompson found that Plaintiff was similarly engaging in "bad faith" and "blatant gamesmanship" in the case pending before her. In particular, Judge Thompson stated that she was "deeply disturbed" by Plaintiff's own admission that he surreptitiously recorded a conversation between the parties during the parties' meet and confer prior to a Rule 26(f) scheduling conference, then "uploaded the recording to YouTube, and included the link to the publicly accessible recording" in a public filing. *Id.* at 5. Judge Thompson stated that Plaintiff's conduct was "highly irregular and inappropriate." *Id.* She went on to explain as follows:

> "Although a pro se litigant may be entitled to great leeway by the Court . . . that does not excuse him from following basic rules of ethics and civility—or the law." Fathi v. Saddleback Valley Unified Sch. Dist., No. 8:20-CV-544-SB, 2020 WL 7315462, at *7 (C.D. Cal. Oct. 28, 2020). "[I]t is inherently unethical for an attorney to record a conversation with another attorney regarding the routine progression of litigation without the other party's knowledge or consent." Nissan Motor Co. v. Nissan Computer Corp., 180 F. Supp. 2d 1089, 1097 (C.D. Cal. 2002). "This behavior raises suspicions, injures public confidence in the legal profession (and thereby the legal system), seriously impedes relations between counsel, and exerts a chilling effect on the normal flow of communication between opposing parties."

Nissan, 180 F. Supp. 2d at 1097. Here, there is no indication that Defendant consented to being recorded, which may have privacy implications. See, e.g., Cal. Penal Code § 632. In addition, Plaintiff may not publicly disclose private conversations between the parties. Plaintiff should also not share the recording with the Court, as the Court is not convinced that "it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1); see also Civ. L.R. 1-4 ("Failure by counsel or a party to comply with any duly promulgated local rule or any Federal Rule may be a ground for imposition of any authorized sanction."). Moreover, the running counter on YouTube indicates that there have been over 100 views of this recording. As such, there is a high likelihood that members of the public have already accessed this recording.

*Id.* Based upon the foregoing, Judge Thompson found that "[n]ot only is Plaintiff's behavior indicative of bad faith, but it is also appropriate for sanctions." *Id.* Judge Thompson ordered Plaintiff "to immediately remove the recording from YouTube, delete copies of this or any recording Plaintiff has retained between Plaintiff and Defendant, and cease any future recording." *Id.* at 5-6.

Further, Judge Thompson found Plaintiff to be a vexatious litigant; in reaching this finding, Judge Thompson listed a number of cases filed by Plaintiff, describing them as follows:

*Stebbins v. Polano*, No. 21-CV-04184-JSW, 2022 WL 2668371, at *5 (N.D. Cal. July 11, 2022) ("Plaintiff is warned that if he persists in filing frivolous or meritless lawsuits, the Court may impose sanctions, bar from him from filing further actions without prior approval, and/or deem him a vexatious litigant.");

*Stebbins v. Rebolo*, No. 22-CV-00546-JSW, 2022 WL 2668372, at *3 (N.D. Cal. July 11, 2022) ("Plaintiff's attempt to manufacture and pursue ultimately meritless copyright infringement claims in an effort to silence online criticism smacks of bad faith and abuse of the Court system. Plaintiff's bad faith and his history of filing frivolous lawsuits further justifies dismissal without leave to amend.");

*Stebbins v. Google, Inc.*, No. 11-CV-03876-LHK, 2011 WL 5150879, at *4 (N.D. Cal. Oct. 27, 2011) ("As stated above, Plaintiff's claim is based on an indisputably meritless legal theory.");

13

*Stebbins v. Stebbins*, 575 F. App'x 705 (8th Cir. 2014) ("We also conclude that the court did not abuse its discretion in imposing the filing restrictions, because it is undisputed that Stebbins has proceeded in forma pauperis on at least sixteen complaints that proved meritless, and has filed numerous frivolous motions, since May 2010.");

*Stebbins v. Bradford*, No. 3:12-CV-03131, 2013 WL 3366289, at *2 (W.D. Ark. July 5, 2013), aff'd, 552 F. App'x 606 (8th Cir. 2014) ("Mr. Stebbins's claims in the instant matter are patently frivolous and have no basis in fact.");

*Stebbins v. Hixson*, No. 3:18-CV-03040, 2018 WL 2124106, at *3 (W.D. Ark. May 8, 2018) ("The Court finds that Mr. Stebbins's recent practice of filing lawsuits in the Eastern District and waiting for them to be transferred to the Western District is a transparent end-run around this Court's filing restrictions, which were imposed on him in Case Number 3:12-CV-03130, Doc. 10.");

*Stebbins v. Microsoft, Inc.*, No. 11-CV-1362, 2012 WL 12896360, at *1 (W.D. Wash. Jan. 13, 2012), aff'd sub nom. Stebbins v. Microsoft Corp., 520 F. App'x 589 (9th Cir. 2013) ("His complaint is wildly untethered from any valid interpretation of contract and arbitration law and time spent dealing with Mr. Stebbins' filings prevents the Court from addressing the genuine, vexing problems that people trust the Court to resolve quickly and fairly. For that reason, the Court will sanction him next time he files a similarly frivolous complaint."); and

*Stebbins v. Texas*, No. 3:11-CV-2227, 2011 WL 6130403, at *3 (N.D. Tex. Oct. 24, 2011), report and recommendation adopted, No. 3:11-CV-2227-N BK, 2011 WL 6130411 (N.D. Tex. Dec. 9, 2011) ("Because Plaintiff has filed four prior actions to confirm nonexistent arbitration awards, two of which have already been dismissed, Plaintiff should be warned that if he persists in filing frivolous lawsuits over which the Court lacks subject matter jurisdiction, the Court may impose monetary sanctions and/or bar him from bringing any further action of any kind in forma pauperis and/or without prior court approval.").

*Stebbins v. Google LLC*, No. 3:23-cv-322 (N.D. Cal. Aug. 31, 2023), ECF No. 71 at 14-16.

Judge Thompson further noted "the hundreds of motions that have been filed in these cases, along with those filed in this case." *Id.* at 16. Additionally, Judge Thompson took judicial notice that "Plaintiff has been declared a vexatious litigant in the Western District

of Arkansas and has been warned repeatedly by courts in this District," yet "continues to repeatedly file numerous claims and motions with limited merit." *Id.* at 17.

Finally, Judge Thompson found "that the motive for Plaintiff's filing of the instant and similar lawsuits [appears to be intended] to stop harassment from other users online." *Id.* In support of her finding, Judge Thompson explained that "Plaintiff's claim in this case is against . . . a YouTube channel allegedly set up to harass him[;] [d]uring a case management conference before the Court, Plaintiff stated that he seeks to stop the harassment directed against him[;] . . . [and] Plaintiff has brought copyright claims of little merit against his critics, whom he considers harassing him online." *Id.* "However," Judge Thompson explained, "that is not a proper use of copyright law." *Id.* Judge Thompson went on to explain that, "[a]lthough the Court is cognizant of the dangers of cyberbullying, the Court reiterates that copyright law is not appropriate vehicle to seek remedy." *Id.* Judge Thompson then dismissed Plaintiff's action against Google LLC. *Id.*

### iv.    U.S. District Court – Western District of Washington

Plaintiff, proceeding pro se and IFP, brought an action against Microsoft, Inc. in the U.S. District Court for the Western District of Arkansas. *See Stebbins v. Microsoft, Inc.*, 2:11-cv-01362 (W.D. Wash. Jan. 13, 2012). In that case, Mr. Stebbins claimed that Microsoft Corporation "owe[d] him $1.5 trillion because he modified the terms of his Xbox Live contract to include an arbitration clause with a 'forfeit victory clause,' which stipulated that if Microsoft did not respond to a request for arbitration within twenty-four hours, Mr. Stebbins would 'automatically win, regardless of the merits of the case.' " *Id.* at 1. When Microsoft did not respond to two arbitration requests from Mr. Stebbins "for amounts totaling $1.5 trillion . . . Mr. Stebbins sought to enforce the agreement and collect his money." *Id.* Presiding U.S. District Judge John C. Coughenour granted Microsoft's

motion to dismiss the action. Judge Coughenour found the lawsuit to be patently frivolous, and explained that he would not be sanctioning Mr. Stebbins only because "Mr. Stebbins raises legitimate questions about the disparate negotiating power between some companies and their customers." *Id*. at 2. Judge Coughenour found that Plaintiff's "use of this forum to raise these questions is not legitimate," that Plaintiff's complaint was "wildly untethered from any valid interpretation of contract and arbitration law," and further, that "time spent dealing with Mr. Stebbins' filings prevents the Court from addressing the genuine, vexing problems that people trust the Court to resolve quickly and fairly." *Id*. Judge Coughenour cautioned Plaintiff that "the Court will sanction him next time he files a similarly frivolous complaint." *Id*. at 3.

Notably, Plaintiff ignored Judge Coughenour's warning. On May 7, 2012, Plaintiff filed suit in the U.S. Court of Federal Claims against the United States, alleging that a federal judge of the U.S. District Court for the Northern District of California "performed a non-judicial act, and also acted in the clear absence of all jurisdiction" when she denied plaintiff's motion to confirm an arbitration award in that court. *See Stebbins v. United States*, 1:12-cv-296 (Fed. Cl. May 14, 2012), ECF No. 4. Dismissing Plaintiff's action as meritless, Chief Judge Emily C. Hewitt of the Federal Court of Claims explained that Plaintiff initiated a "*Bivens* action" against the United States seeking damages in the amount of $500 billion. *Id*. at 1-2. Judge Hewitt found that "Plaintiff appears to be dissatisfied with the decision of a judge of the Northern District of California denying his motion to confirm an arbitration award" after he "submitted an email to Google, Inc., notifying them of a unilateral amendment [he] was imposing on their You[T]ube terms of service." *Id*. at 2. Almost precisely like Mr. Stebbins's case against Microsoft dismissed by Judge Coughenour as "not legitimate," Plaintiff informed Google that his unilateral

amendment "would be deemed accepted if Google did not cancel plaintiff's YouTube account within thirty days." *Id.* "When Google did not cancel the account, plaintiff sent Google an invitation to arbitrate a dispute for $500 billion" and argued that Google triggered the forfeit victory clause when it ignored Plaintiff's request for arbitration. *Id.* According to Judge Hewitt, when the district judge in the Northern District of California denied Plaintiff's motion to confirm the "arbitration award," Plaintiff claimed that the judge "wrongfully cost me literally billions of dollars." *Id.* Judge Hewitt found that, while the Federal Court of Claims lacked jurisdiction, transfer to another court was not appropriate. *Id.* at 4-5. Judge Hewitt determined "that it is not in the interest of justice to transfer plaintiff's complaint . . . because plaintiff's claims are unlikely to be meritorious in another court of the United States." *Id.* at 5.

### B.    Plaintiff's Conduct in this Action

Plaintiff represented to the Court that on March 27, 2024, he contacted the undersigned's chambers by phone and spoke to members of the undersigned's staff to request expedited consideration of his pending Motion for ECF Access. When Plaintiff was not granted expedited consideration of his motion, Plaintiff sent an email to the chambers of the presiding District Judge with a "formal complaint" that the undersigned's law clerk "was quite rude, argumentative, and confrontational" during the phone call, and requesting that the Court take action by (1) assigning the case to another law clerk, (2) requiring the undersigned to recuse himself from the case, or (3) to terminate the law clerk's employment. Plaintiff represented to the Court that he surreptitiously recorded his March 27, 2024 telephone call and had uploaded the recording to YouTube.

Plaintiff again called the undersigned's chambers on August 2, 2024 "to inquire about why the case was taking so long" and requested to speak with the Judge's law clerk.

(ECF No. 18 at 3). Plaintiff represented to the Fourth Circuit Court of Appeals that he also recorded the August 2, 2024 telephone call, and that he again purportedly uploaded his recording of this telephone call to YouTube. (ECF No. 18 at 3). The following business day, Plaintiff filed a Petition for Writ of Mandamus with the Fourth Circuit Court of Appeals. *See generally id.* On September 24, 2024, the Fourth Circuit denied Plaintiff's petition, finding that "[t]he present record does not reveal undue delay in the district court." (ECF No. 20 at 2).

## II.   LEGAL STANDARD

A federal district court may authorize a person to bring a civil action *in forma pauperis* ("IFP")—that is, without the prepayment of fees—when the person submits an affidavit establishing they are "unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). However, "IFP status is a privilege, not a right[.]" *McGee v. Domestic Rels. Off. Admin.*, 3:23-cv-02518, 2024 WL 1592699, at *4 (N.D. Tex. Feb. 29, 2024), *adopted*, 2024 WL 1886546 (N.D. Tex. Apr. 30, 2024). *See also Jones v. City of Wichita*, 20-cv-1142, 2020 WL 2850170, at *1 (D. Kan. June 2, 2020) ("Proceeding in forma pauperis in a civil case is a privilege, not a right – fundamental or otherwise.") (quoting *White v. Colorado*, 157 F.3d 1226, 1233 (10th Cir. 1998)), *adopted*, 20-cv-1142, 2020 WL 3412537 (D. Kan. June 22, 2020).

"While a court should be appropriately lenient with a party proceeding *pro se*, the right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law." *Id.* (citing *Hulsey v. Texas*, 929 F.2d 168, 171 (5th Cir. 1991)). Furthermore, Congress expressly recognized that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits. *See Neitzke v.*

*Williams*, 490 U.S. 319, 324 (1989); *Deutsch v. United States*, 67 F.3d 1080, 1083 (3d Cir. 1995). Consequently, a federal district court is statutorily required under 28 U.S.C. § 1915(e) to screen complaints filed by plaintiffs who—like Mr. Stebbins in the matter *sub judice*—seek to proceed *in forma pauperis* ("IFP"). 28 U.S.C. § 1915. On preliminary screening, the Court's role is to determine whether the action must be dismissed for, among other reasons, failing to state a plausible claim for relief, or asserting a frivolous/malicious claim. 28 U.S.C. § 1915(e)(2)(B). *See also Randolph v. U.S. Dep't of Just. Identity Theft Task Force*, 16-cv-36, 2016 WL 112545, at *1 (D. Md. Jan. 8, 2016), *aff'd*, 643 Fed. App'x 250 (4th Cir. 2016). The express purpose of § 1915(e) is "the prevention of abusive or capricious litigation." *Jones v. City of Wichita*, 20-cv-1142-JAR-KGG, 2020 WL 2850170, at *1 (D. Kan. June 2, 2020), *adopted*, No. 20-1142-JAR-KGG, 2020 WL 3412537 (D. Kan. June 22, 2020).

Federal district courts[2] have discretion to deny IFP requests when a litigant has repeatedly abused the IFP privilege on prior occasions. *See, e.g.*, *Aruanno v. Davis*, 168 F. Supp. 3d 719, 721 (D.N.J. 2016) ("This Court has the discretionary authority to deny *in forma pauperis* status to persons who have abused the privilege."), *aff'd*, 679 Fed. App'x 213 (3d Cir. 2017). *See also Cabrera v. Horgas*, 98-cv-4231, 1999 WL 241783, at *1 (10th Cir. Apr. 23, 1999) ("The decision to grant or deny in forma pauperis status lies within the sound discretion of the court."); *Weller v. Dickson*, 314 F.2d 598 (9th Cir. 1963)

---

[2] The United States Supreme Court denies litigants who have repeatedly filed frivolous petitions the right to proceed *in forma pauperis* pursuant to its own Rule 39.8. *See, e.g.*, *In re Whitaker*, 513 U.S. 1 (1994) (denying IFP status when petitioner had filed twenty-three claims for relief, all of which had been denied without dissent); *Martin v. District of Columbia*, 506 U.S. 1 (1992) (denying IFP application of "a notorious abuser of this Court's certiorari process" when ten out of eleven prior petitions had been deemed frivolous); *In re Sindram*, 498 U.S. 177, 180 (1991) ("[T]he Court has a duty to deny *in forma pauperis* status to those individuals who have abused the system."); *In re McDonald*, 489 U.S. 180 (1989) (denying IFP status to non-prisoner seeking to file a petition for a writ of habeas corpus in the Supreme Court, where the person had pursued more than seventy prior filings).

(explaining that the federal courts have "broad discretion" in denying an application to proceed *in forma pauperis*), *cert. denied*, 375 U.S. 845 (1963).

This Court's discretionary authority to deny *in forma pauperis* status to persons who have abused the privilege derives from § 1915(a) itself, *see* 28 U.S.C. § 1915(a) ("any court of the United States *may authorize* the commencement . . . of any suit . . . without prepayment of fees or security therefor") (emphasis added), and from the federal courts' own "inherent power and constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." *Aruanno*, 168 F. Supp. 3d at 722 (citing *In re McDonald*, 489 U.S. at 185 n.8). The rationale for this principle is a pragmatic one; as the U.S. Supreme Court explained in *McDonald*:

> [P]aupers filing *pro se* petitions are not subject to the financial considerations — filing fees and attorney's fees — that deter other litigants from filing frivolous petitions. Every paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources. A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice. The continual processing of petitioner's frivolous requests . . . does not promote that end.

*In re McDonald*, 489 U.S. at 184.

For instance, the U.S. District Court for the Eastern District of Pennsylvania denied a pro-se plaintiff's motion to proceed *in forma pauperis* in *Douris v. Middletown Twp.*, 293 Fed. App'x 130, 131 (3d Cir. 2008) (per curiam). Although Mr. Douris appeared to qualify financially for IFP status, the federal district court concluded that Mr. Douris's frequent filings in federal court constituted an abuse of the system and "extreme circumstances" that justified denying his request. *Id*. The federal district court explained that Mr. Douris was filing his ninth lawsuit in the Eastern District of Pennsylvania over the previous ten-year period, and that significant time and resources had been spent on

Mr. Douris's largely frivolous claims. *Id.* On appeal, the Third Circuit Court of Appeals held that the U.S. District Court for the Eastern District of Pennsylvania did not err in denying IFP status based on Mr. Douris's well-documented history of abusive filings. *Id.* at 132-33. Accordingly, the Third Circuit remanded the action and ordered the district court to provide Mr. Douris a reasonable amount of time to pay the filing fee, noting that the federal district court "of course, may dismiss the action should Douris fail to do so." *Id.* at 133 n.4.

## III.   ANALYSIS

While Defendants have challenged the veracity of Plaintiff's representation of pauper status, (*see* ECF No. 11 at 2), the undersigned has assumed for the purposes of the discussion herein that Plaintiff financially qualifies for IFP status. Nonetheless, the undersigned **FINDS** that Mr. Stebbins's application to proceed IFP is properly denied under the circumstances. Much like the petitioner in *Douris*, whose IFP motion was denied in light of the magnitude that his decade-long history of meritless litigation had already taxed the court system, here Plaintiff's *Application* is preceded by what Plaintiff describes in his own words as an "abysmal win-loss record" in which he "ha[s] never won a case." Mtn. to Appoint Counsel, *Stebbins v. Rumble, Inc.*, No. 1:24-cv-1174-MN (Dist. Del. Jan. 3, 2025), ECF No. 10 at 2, 5. Just as the magistrate judge in the U.S. District Court for the Western District of Arkansas explained to Mr. Stebbins in his February 6, 2013 Report and Recommendation, this long history of bringing unmeritorious litigation can be considered in ruling on an application to proceed IFP. *See Stebbins v. Stebbins*, 3:12-cv-03130 (W.D. Ark. Feb. 6, 2013), ECF No. 7 at 3.  The U.S. Supreme Court has a long-standing policy to discourage frivolous and malicious IFP filings, "particularly [from] those few persons whose filings are repetitive with the obvious effect of burdening

the office of the Clerk and other members of the Court staff." *Id.* (citing *Zatko v. California*, 502 U.S. 16, 17 (1991)). *See also Martin*, 506 U.S. at 2 (holding that the filing of eleven writ of certiorari petitions in noncriminal matters in a two-year window, coupled with a history of such filings, constituted frivolous filing and precluded the plaintiff from such "abusive" further filings); *Day v. Day*, 510 U.S. 1, 2 (1993) (denying a plaintiff leave to proceed IFP in light of the plaintiff's history of filing thirty-five such requests over a nine-year period). Plaintiff's extensive, prolific, and unsuccessful barrage of litigation in federal court has improperly taxed the courts' limited resources. "Based on the sheer number of Plaintiff's filed cases and the clear policy of the Supreme Court to discourage such 'abusive] voluminous filing," the undersigned concludes—just like the magistrate judge concluded in *Stebbins v. Stebbins* in 2013*, see id.*—"that Plaintiff's request to proceed IFP should be denied." *Stebbins v. Stebbins*, 3:12-cv-03130 (W.D. Ark. Feb. 6, 2013), ECF No. 7 at 3.

Furthermore, beyond the mere fact of Plaintiff's history of litigation, denial of Plaintiff's IFP application is likewise improper because it appears that Plaintiff is bringing the instant action for an improper purpose. Just as Judge Thompson explained in dismissing Plaintiff's similar action against Google LLC, in this matter Plaintiff appears to bring copyright claims against Defendants based upon their criticism of him online— which, as Judge Thompson has already explained, "is not a proper use of copyright law." *Stebbins v. Google LLC*, No. 3:23-cv-322 (N.D. Cal. Aug. 31, 2023), ECF No. 71 at 17. The record supports finding such an improper purpose for this litigation. Despite Plaintiff's allegations that the Defendants' actions were "depriving me of algorithmic support . . . [and] ad revenue," (*see* ECF No. 2 at 13 ¶ 76), Plaintiff's IFP application indicates that, for the twelve-month period between March 21, 2023, and March 21, 2024, Plaintiff's self-

styled "job" of creating videos and uploading them to YouTube garnered him an average of only "$47.65 per month." (ECF No. 1 at 1; ECF No. 2 at 1 ¶ 1). Plaintiff asserts in his Complaint that he paid $85 "for the cost of registering the copyright" for the six songs at issue, (*see* ECF No. 2 at 17 ¶ 94; 18 ¶ 101), and Plaintiff has represented in the course of the parties' briefing that he paid the composer "only . . . $50 to compose all ten songs for me. That's $5 per song." (ECF No. 13 at 2). Plaintiff represents that he paid an attorney "$30 . . . to draft the contract transferring copyright ownership to me . . . and for what it's worth, I did not pay those expenses in cash[,] [but rather] I paid for them using . . . credit [that] could not be spent anywhere else except on the Fiverr website[.]" *Id.*

In contrast to the low financial stakes posed by the infringement, Plaintiff's Complaint specifically takes issue with the alleged insults against him made by Defendant Moon and the user identified as "Bruno," (*see* ECF No. 2 at 8-9 ¶ 44, 16 ¶ 89). In great detail, Plaintiff characterizes the Kiwi Farms website and its users as "trolls . . . dedicated almost exclusively to harassing, dox[]ing, and cyberstalking . . . people for its users' demented amusement." *Id.* at 1 ¶ 6; 16 ¶ 90. According to Plaintiff, the users of the Kiwi Farms website "call their victims 'lolcows' because their pain can be milked for laughs," and the stated purpose of this "group," according to Plaintiff, is "[g]ossip and exploitation of mentally handicapped for amusement purposes." *Id.* at 2 ¶ 6. Plaintiff specifically includes allegations concerning the criticism from Kiwi Farms user Bruno "that [Plaintiff's] voice is annoying," in addition to Bruno's criticism of Plaintiff's video (*see* ECF No. 2 at 16 ¶ 89), as well as Defendant Moon's alleged post in which Moon publicly ridicules Plaintiff's appearance, demeanor, and status. *See id.* at 8-9 ¶ 44. Notably, among the monetary and injunctive relief he seeks, Plaintiff also asks "that the Defendant be enjoined to . . . permanently terminate Bruno Powroznik's account with Kiwi Farms . . .

and to prevent Bruno from rejoining the site after being banned[.]" (ECF No. 2 at 18 ¶ 102). He also seeks nearly $1 million in money damages from Defendants—specifically noting that the Kiwi Farms website "serves as [Defendant] Joshua Moon's only non-nominal source of income." *Id.* at 3 ¶ 9. Plaintiff's suit, therefore, expressly aims to chill his critics' voices.

In a similar case before the U.S. District Court for the Northern District of California presiding U.S. District Judge Jeffrey S. White expressly found that "Plaintiff's attempt to manufacture and pursue ultimately meritless copyright infringement claims in an effort to silence online criticism smacks of bad faith and abuse of the Court system." *Stebbins v. Rebolo*, 4:22-cv-546, 2022 WL 2668372, at *3 (N.D. Cal. July 11, 2022) (emphasis added), *opinion vacated on reconsideration*, 2023 WL 2699982 (N.D. Cal. Mar. 28, 2023). Judge White expressly warned Plaintiff "that if he persists in filing frivolous or meritless lawsuits, the Court may impose sanctions, bar [him] . . . from filing further actions without prior approval, and/or deem him a vexatious litigant." *Id.*

Furthermore, court records clearly document Plaintiff's consistent, ongoing pattern of abusing the IFP privilege. Most notably, despite multiple warnings from numerous federal district courts across the country, Plaintiff continues to engage in bad-faith conduct and blatant gamesmanship. Ignoring Judge Thompson's sanctions in Plaintiff's case against Google LLC based upon Plaintiff's surreptitious recording of his conversation with counsel during a meet-and-confer discussion, Plaintiff continues to employ surreptitious recording of conversations and to post them publicly on YouTube in order to pressure other parties and the courts to follow his commands. Specifically, Plaintiff represented to the Court that on March 27, 2024, he contacted the undersigned's chambers by phone and spoke to members of the undersigned's staff to request expedited

consideration of his pending Motion for ECF Access. When Plaintiff was not granted expedited consideration of his motion, Plaintiff sent an email to the chambers of the presiding District Judge with a "formal complaint" that the undersigned's law clerk "was quite rude, argumentative, and confrontational" during the phone call, and requesting that the Court take action by (1) assigning the case to another law clerk, (2) requiring the undersigned to recuse himself from the case, or (3) to terminate the law clerk's employment. Plaintiff represented to the Court that he surreptitiously recorded his March 27, 2024 telephone call and had uploaded the recording to YouTube. Plaintiff again called the undersigned's chambers on August 2, 2024 "to inquire about why the case was taking so long" and requested to speak with the Judge's law clerk. (ECF No. 18 at 3). Plaintiff represented to the Fourth Circuit Court of Appeals that he also recorded the August 2, 2024 telephone call, and that he again purportedly uploaded his recording of this telephone call to YouTube. (ECF No. 18 at 3). The following business day, Plaintiff filed a Petition for Writ of Mandamus with the Fourth Circuit Court of Appeals. *See generally id.* On September 24, 2024, the Fourth Circuit denied Plaintiff's petition, finding that "[t]he present record does not reveal undue delay in the district court." (ECF No. 20 at 2). Each of these two occasions demonstrates a complete disregard for Judge Thompson's Order in which she explained that such conduct was utterly inappropriate. Importantly, Plaintiff's litigation history demonstrates that this is not the first time Plaintiff preemptively, surreptitiously recorded telephone conversations with judiciary personnel—nor is it the first time Plaintiff sought to "sanction" court staff for refusing to immediately capitulate to his demands over the phone. *See Stebbins v. Gay*, 4:15-cv-332 (E.D. Ark. June 5, 2015), ECF No. 2.

The Plaintiff's pro-se status is not an excuse for his misconduct before this Court, as "[n]either the liberal pleading rules nor generous pro se practices of the courts has eliminated 'the time honored notion that the law and the courts of the United States are important parts of American Society worthy of respect[.]' " *Fenner v. Bell*, 1:08-cv-00367, 2009 WL 6372547 n.1 (M.D.N.C. Nov. 13, 2009) (quoting *Theriault v. Silber*, 579 F.2d 302, 303 (5th Cir. 1978)). As such, "pro se status is not a free pass to engage in abusive conduct." *Id.* Moreover, this district's operative Pro Se Handbook advises *pro se* parties that they are "responsible for learning about and following all the procedures that govern the court process . . . [and] for becoming familiar with and following the Court's local rules and procedures." Pro Se Handbook, at §§ 2.3, 4. The Handbook further advises that "[t]he Court may penalize a party or attorney for failing to comply with a law, rule or order at any point while a lawsuit is pending . . . and pro se litigants are subject to the same sanctions as licensed attorneys." *Id.* One of these local rules with which *pro se* plaintiffs must comply expressly requires attorneys to conduct themselves in accordance with the applicable Rules of Professional Conduct "[i]n all appearances, actions and proceedings within the jurisdiction of this court." L.R. Civ. P. 83.7. For much the same reasons explained by Judge Thompson in *Stebbins v. Google*, in this matter Plaintiff has simply failed to do so.

Finally, in light of Plaintiff's well-documented pattern of conduct in the federal district courts over the last quarter-century, the undersigned anticipates that Plaintiff will object to the instant Proposed Findings and Recommendation on the grounds of improper judicial bias against him. Notably, Plaintiff has sought recusal or complained of unfair bias against a long line of federal and state judicial officers, including at least one other United States Magistrate Judge. Once again, however, Plaintiff's attempt to raise

the specter of unfair judicial bias in this case is baseless. First, a judge is not required to recuse himself merely on the basis of "unsupported, irrational, or highly tenuous speculation." *United States v. Quinones*, 201 F. Supp. 3d 789, 796 (S.D. W. Va. 2016). Furthermore, as multiple courts have already informed Plaintiff in rejecting his bias arguments against other judicial officers, "recusal statutes are meant to shield litigants from biased and prejudiced judges, and not as a means of protesting court orders and procedures with which litigants disagree." *Sperry v. Corizon Health, Inc.*, 18-cv-3119, 2020 WL 5057584, at *2 (D. Kan. Aug. 27, 2020). *See, e.g., Stebbins v. Stebbins*, 3:12-cv-03130 (W.D. Ark. July 3, 2013), ECF No. 10 at 7 ("The fact that Mr. Stebbins disagrees with or does not like [the magistrate judge's] recommendations, or this Court's findings, does not create grounds for disqualification."). *Stebbins v. Gay*, 4:15-cv-436 (E.D. Ark. Sept. 23, 2015), ECF No. 25 at 7 ("Put bluntly, it appears Plaintiff [Mr. Stebbins] is attempting to contest judicial decisions he disagrees with"). Moreover, the U.S. Supreme Court has explained that, generally, the alleged bias and prejudice, to be disqualifying, "must stem from an extrajudicial source and result in an opinion on the merits on some basis *other than what the judge learned from his participation in the case.*" *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966) (emphasis added). *See also In re Nicole Energy Servs., Inc.*, 423 B.R. 840, 845 (Bankr. S.D. Ohio 2010) (citing *Grinnell Corp.*, 384 U.S. at 583) ("Almost invariably . . . opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.").

In *Stebbins v. Rebolo*, a similar copyright claim asserted by Plaintiff in the U.S. District Court for the Northern District of California, presiding U.S. District Judge Jeffrey

S. White granted Mr. Stebbins's request to re-open the case in light of his pro-se status, but denied the Plaintiff's request for recusal. Plaintiff sought recusal "on the basis that the Court holds a personal grudge against Plaintiff based on his behavior." *See Stebbins v. Rebolo*, 22-cv-546, 2023 WL 2699982, at *2 (N.D. Cal. Mar. 28, 2023). Judge White explained that "Plaintiff seeks recusal based on this Court's rulings, but an adverse judicial ruling is not an adequate basis for recusal[,]" because recusal is required "only if the bias or prejudice stem from an extrajudicial source and not from conduct or rulings made during the course of the proceeding. *Id.* (citing *Litkey v. United States*, 510 U.S. 540, 549 (1994)).

Here, Plaintiff himself acknowledged in his Petition for Writ of Mandamus to the Fourth Circuit Court of Appeals on August 9, 2024, that "to his credit, Magistrate Judge Tinsley immediately pick[ed] up on . . . [defendants'] highly inflammatory" Motion for Screening of In Forma Pauperis Complaint and for Leave to Supplement the Record (ECF No. 6), denying the motion on April 15, 2024,  and did indulge Defendants' purportedly "clear design[] solely to stir up resentment against me [Plaintiff] . . . on account of the fact that I am subject to a lawsuit-filing restriction in my home state." (ECF No. 18 at 2). It was not until Plaintiff exhibited the same pattern of misconduct in this case that the undersigned considered Plaintiff's litigation history to be relevant to Plaintiff's pending IFP application. Nothing on the record supports any finding that would suggest favoritism or antagonism, and therefore there is no indication of actual bias or even an appearance of bias which would require the undersigned's recusal under 28 U.S.C § 144 or 455.

In conclusion, Plaintiff's continued bad-faith conduct imposes substantial, unnecessary costs on the judicial system, and wastes judicial resources. As the Western District of Texas explained when dismissing a plaintiff's complaint pursuant to 28

U.S.C. § 1915(e)(2)(B) under similar circumstances, a plaintiff's pro-se status does not offer him "an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Emrit v. Nat'l Acad. of Recording Arts & Scis.*, 1:14-cv-00392, 2015 WL 518774, at *2-4 (W.D. Tex. Feb. 5, 2015) (declaring pro-se litigant to be vexatious after filing forty-seven meritless federal lawsuits). The Fourth Circuit has explained that the All Writs Act, 28 U.S.C. § 1651(a) "undoubtedly . . . grants federal courts the authority to limit access to the courts by vexatious and repetitive litigants." *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 817 (4th Cir. 2004). Simply put, the undersigned **FINDS** that it is necessary to restrict the IFP privilege under the circumstances in order to deter Plaintiff from abusing the judicial process and to protect this Court's orderly administration of its docket. In view of the Plaintiff's well- documented abuse of the judicial process, including in this civil action, the undersigned recommends that Plaintiff's Application to Proceed Without Prepayment of Fees and Costs be denied, and Plaintiff be required to pay the filing fee should he wish to prosecute the instant action before this Court.

## IV.    <u>RECOMMENDATION</u>

Accordingly, for the foregoing reasons, it is respectfully **RECOMMENDED** that the Court **DENY** Plaintiff's *Application* (ECF No. 1), and dismiss his case without prejudice unless he pays the $405.00 filing fee within thirty days of an order accepting this recommendation or by some other deadline established by the Court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days (filing of

objections) and three (3) days (mailing) from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Copies of any objections shall be provided to the opposing party or, if it is represented by counsel, to its counsel, and to Judge Johnston.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy to counsel of record and any unrepresented party.

ENTERED:   January 27, 2025

Dwane L. Tinsley
United States Magistrate Judge